Mark Crabtree, OSB #015070
crabtreem@jacksonlewis.com
JACKSON LEWIS P.C.
200 SW Market St., Ste. 540
Portland, Oregon 97201
Telephone: (503) 229-0404
Facsimile: (503) 229-0405
Attorneys for Defendant

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| KELLY STILLWELL,<br><br>  Plaintiff,<br><br>  vs.<br><br>OLD DOMINION FREIGHT LINE, INC.,<br>a Virginia corporation,<br><br>  Defendant. | Case No.:  3:19-cv-1789-SI<br><br>**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** |

### CERTIFICATE REQUIRED BY L.R. 7-1(a)

Pursuant to Local Rule 7-1(a)(1), the undersigned counsel certifies that Defendant's counsel conferred with counsel for Plaintiff regarding the issues raised by this motion.  As to dismissal of the claims in Plaintiff's Complaint, no agreement could be reached without intervention of this Court.

Page 1 – DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

## MOTION

Defendant Old Dominion Freight Line, Inc. ("Old Dominion," "the Company," or "Defendant"), by and through its undersigned counsel, hereby moves for Summary Judgment in its favor and against Plaintiff Kelly Stillwell ("Stillwell" or "Plaintiff"). This motion is brought pursuant to Federal Rule of Civil Procedure 56 and is supported by the following memorandum of law, along with the Declarations of Tom Lillywhite, Hugh Morris, and Mark Crabtree.

Summary judgment is appropriate because no genuine issue of material fact exists, and Defendant is thus entitled to judgment as a matter of law.

## MEMORANDUM OF LAW

### I.   INTRODUCTION

Old Dominion previously employed Stillwell as the Assistant Service Center Manager at its Portland Service Center. In March 2018, multiple employees reported that Stillwell belittled, degraded, and yelled at other employees. In response, Old Dominion appropriately issued Stillwell a final written warning and instructed him to improve his performance, including treating others with dignity, courtesy, and respect, in accordance with Old Dominion's policy. Not more than two months later, management received new complaints that Stillwell continued to belittle other employees. Stillwell was terminated as a result, consistent with Old Dominion's policies, practices, and leadership expectations.

Plaintiff's discrimination, retaliation, and associated claims are factually baseless. While he speculates that the reason for his termination was an earlier medical impairment and an associated leave of absence, there is zero evidence that the termination decision was based on anything other than legitimate, nondiscriminatory, nonretaliatory business-related reasons. Quite

simply, no reasonable jury could conclude that Plaintiff's claims have merit. Accordingly, Defendant's Motion for Summary Judgment should be granted.

## II.  FACTUAL BACKGROUND

### A.  <u>Old Dominion's Business and Commitment to Core Values</u>

Old Dominion is a transportation solutions company headquartered in Thomasville, North Carolina. The Company is founded on principles of respect, courtesy, and professionalism. Declaration of Tom Lillywhite ("Lillywhite Decl.") ¶ 2. Old Dominion works hard to differentiate itself from competitors by endeavoring to ensure that all employees at all levels are treated with respect and courtesy in the workplace. *Id.* Old Dominion's culture and core values include expectations that all employees treat each other with professionalism, courtesy, and respect. *Id.*, Ex. 1.

Old Dominion operates a service center in Portland, Oregon. Old Dominion's core values extend to its Portland operations. Deposition of Kelly Stillwell ("Stillwell Dep."), attached as Exhibit 1 to the Declaration of Mark Crabtree, at 55:15-18 ("the [Portland] culture was to be a family-friendly environment, and to be a place of working together with respect."). Old Dominion's core values are an important piece of how the Company does business. *Id.* at 56:7-10. The culture and core values are set forth in the Company's employee handbook, Lillywhite Decl. ¶ 2, Ex. 1, regularly discussed by the Portland management team, Stillwell Dep. at 56:14-15, and reviewed with applicants and new hires, *id*. at 56:22-57:2; 57:14-22.

It is undisputed that violations of Old Dominion's core values include belittling conduct by managers, barking orders at subordinates, and chastising others in public. *Id.* at 62:2-5; 63:9-12; 65:8-11; 95:19-23; 96:23-97:2. Relatedly, it is undisputed that a violation of Old Dominion's core values is an appropriate basis for disciplinary action. *Id.* at 62:14-16.

### B. Stillwell's Employment with Old Dominion

In March 2009, Old Dominion hired Stillwell as the Outbound Operations Manager at the Portland Service Center. Stillwell Dep. at 45:17-22. In August 2013, Old Dominion promoted Stillwell to Assistant Service Center Manager. *Id.* at 75:7-9. In the latter role, Stillwell supervised, directly and indirectly, approximately 65 employees, including around 45 Dockworkers. *Id.* at 77:3-6; 78:2-4,12:14; 49:12-18. Throughout his employment, Stillwell reported to the Service Center Manager, Jeff Lorenzini. *Id.* at 46:8-10, 22-24.

In Stillwell's role as Assistant Service Center Manager, he was generally responsible for ensuring that others were treated with dignity and respect. As a leader within the Portland Service Center, Stillwell was expected to set an example by treating others with dignity and respect. *Id.* at 97:23-98:6; Lillywhite Decl. ¶ 3, Ex. 2.

### C. Stillwell is Identified for Potential Transfer to a New Role

In or about February 2017, Old Dominion created a new Regional Linehaul Manager ("RLM") position. Declaration of Hugh Morris ("Morris Decl.") ¶ 2. The new position was generally responsible for managing regional linehaul dispatch operations, reporting up to the Vice President of Transportation, Hugh Morris. *Id.*, Ex. 1.

In or about April 2017, Morris and others interviewed Stillwell as a candidate for the new position. Morris tentatively agreed to transfer Stillwell into the position, subject to Lorenzini locating and training Stillwell's replacement. There was no specific timeline for filling the new position. *Id.* ¶ 3. Due to staffing issues in 2017, Stillwell's transfer was delayed indefinitely. *Id.*; Stillwell Dep. at 103:9-13.

Page 4 – DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT

Jackson Lewis P.C.
200 SW Market St. Ste. 540
Portland OR 97201
(503) 229-0404 | (503) 229-0405
(fax)

### D. Old Dominion Grants Stillwell Leave for a Medical Condition and Fully Accommodates Him Following His Return to Work

In October 2017, Stillwell experienced medical issues related to his esophagus. Stillwell Dep. at 121:8-12. He was off work on medical leave beginning on October 6, 2017, and lasting through January 23, 2018. *Id.* at 121:21-25. Old Dominion granted Stillwell all medical leave he requested and never interfered with Stillwell's requests for time off work. Stillwell Dep. at 125:13-20; Lillywhite Decl. ¶ 4, Ex. 3.

During his absence, Stillwell did not use his accrued sick leave. Old Dominion paid Stillwell his regular salary until such time as he qualified for long-term disability benefits. Stillwell Dep. at 123:16-25.

Stillwell returned to work on or about January 24, 2018. Following his return to work, Stillwell's doctor limited Stillwell to working six hours at a time for the first week, eight hours at a time the second week, and ten hours at a time the third week. Stillwell Dep. at 128:9-21, Ex. 13, p. 5. Stillwell discussed a return to work plan with his manager, Lorenzini, and his second-level manager, Regional Vice President – Pacific Northwest, Scott Goodrich. Both managers told Stillwell to work however much he could handle. Stillwell Dep. at 129:10-17. Between the time of his return to work and April 2, 2018, Stillwell continued to take intermittent time off for medical treatment.

Old Dominion fully accommodated Stillwell's intermittent time off requests. Stillwell Dep. at 130:14-21. Stillwell did not ask his managers for any disability accommodations other than the temporary, shortened schedule. Stillwell Dep. at 130:13-24. As of April 2, 2018, Stillwell had no medical restrictions on his work activities. *Id.*, Ex. 13.

Page 5 – DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Jackson Lewis P.C.
200 SW Market St. Ste. 540
Portland OR 97201
(503) 229-0404 | (503) 229-0405
(fax)

### E. Stillwell's Transfer is Delayed

Based on Stillwell's medical leave of absence, Morris and Lorenzini initially planned to postpone Stillwell's transfer to the RLM position until at least January 1, 2018. Morris Decl. ¶ 4, Ex. 2. In part because Stillwell was not back to work by January 1, 2018, Morris held off on any plans to transfer Stillwell. *Id.* ¶ 5.

On February 28, 2018, Stillwell contacted Morris to inquire about setting a date for Stillwell's transfer. *Id.* ¶ 5, Ex. 3. At that time, Morris was not prepared to commit to a transfer because various internal processes were required to make that happen (*e.g.*, finding and training Stillwell's replacement in coordination with Stillwell's manager, Lorenzini) and Morris was under no deadlines to fill the role. *Id.*[1] At the same time, Lorenzini and Goodrich were allowing Stillwell time to ease back into his role as the Assistant Service Center Manager. Stillwell Dep. at 129:10-17.

### F. Stillwell is Warned to Conform His Conduct to Old Dominion's Core Values

On March 27 and 28, 2018, Goodrich and Lillywhite visited the Portland Service Center. During their visit, they spoke with managers and supervisors and, in doing so, fielded negative comments from more than one of Stillwell's subordinates about Stillwell's management style. Lillywhite Decl. ¶ 5. More than one manager reported that "Kelly's approach is not good"; that managers "are belittled and he degrades them"; and that he was "yelling at [Operations Manager]'s/Supervisors." *Id.*, Ex. 4.

Based on the employee feedback, and based on Old Dominion's ongoing efforts to try and ensure that all employees at all levels are treated with respect and courtesy in the workplace, Goodrich and Lillywhite prepared a written warning to Plaintiff. The written warning was

---

[1]  Indeed, Old Dominion has never filled the open position to this day, and there are no current attempts to fill the role. Morris Decl. ¶ 8.

Page 6 – DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

**Jackson Lewis P.C.**
200 SW Market St. Ste. 540
Portland OR 97201
(503) 229-0404 | (503) 229-0405
(fax)

characterized as a "final" warning given the seriousness with which management accorded the issues raised by the Portland employees during the Service Center visit. Lillywhite ¶ 6, Ex. 5. On April 19, 2018, Lorenzini presented the final written warning to Plaintiff. Stillwell Dep. at 84:24-85:2.

When Lorenzini delivered the final written warning, Lorenzini explained to Plaintiff that Goodrich was "pissed off" and that "had [Stillwell] been there at the time [Goodrich and Lillywhite] were there, he would have fired [Stillwell] on the spot." Further, Goodrich was "pissed off all weekend" after hearing reports that Plaintiff belittled, yelled, and called people out in manager meetings. Stillwell Dep. at 82:4-20. Plaintiff acknowledged and agreed he has no information to suggest that Goodrich would be upset with him for any reason other than the employee complaints. *Id.* at 93:2-12.

### G.   Stillwell is Terminated Following Continued Reports of Misconduct

On May 25, 2018, Malena Winborne, the Portland Service Center's Human Resources Manager, notified Lillywhite about additional concerns with Stillwell's interactions with others, including one complaint about Stillwell's treatment of Operations Manager Nic Hanson. Lillywhite Decl. ¶ 7. Ms. Winborne's correspondence noted that various employees had recently vented to her about their frustrations with Stillwell. She requested Lillywhite's involvement "to get PDX back on track." *Id.* ¶ 7, Ex. 6.

On May 30, 2018, Lillywhite interviewed Mr. Hanson. Mr. Hanson reported that, on a prior Wednesday, and in preparation for a service center cookout the following Friday evening, Stillwell sent him an email asking him to clean the grills and coolers. On that Thursday, Stillwell called Mr. Hanson to ask who had completed the assignment. After Mr. Hanson informed him that he had not had time, Stillwell went to the dock office and asked the same

Page 7 – DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT

Jackson Lewis P.C.
200 SW Market St. Ste. 540
Portland OR 97201
(503) 229-0404 | (503) 229-0405
(fax)

question of Mr. Hanson in front of three other employees, including Dan Marsh. Lillywhite noted that "Nic feels that Kelly belittled him in front of others." Lillywhite Decl. ¶ 8, Ex. 7.

Lillywhite also interviewed Mr. Marsh, who confirmed that "Kelly stormed into the dock office and raked Nic (OM) over the coals about not cleaning the [grills] and coolers." *Id.* Lillywhite noted that "Dan thought it was uncalled for." *Id.*

Lillywhite elevated the employees' concerns to Goodrich and his immediate supervisor, then Director of Human Resources Development, DeeDee Cox. *Id.* ¶ 9 & Ex. 7. In light of Stillwell's prior written warning, issued less than 60 days earlier, the managers had no difficulty deciding to terminate Stillwell's employment based on the repeated reports by multiple Portland employees that Mr. Stillwell interacted inappropriately towards other employees, in violation of Old Dominion's policy regarding core values. *Id.* ¶¶ 9, 10, Ex. 8.

### III.   LEGAL ARGUMENT

Stillwell's complaint asserts the following claims for relief: (1) FMLA and OFLA interference and retaliation; (2) discrimination and retaliation on the basis of a disability, including an alleged failure to accommodate; (3) sick leave retaliation in violation of ORS 653.641; (4) family relationship discrimination in violation of ORS 659A.309; and (5) common law wrongful discharge. As discussed below, Defendant is entitled to judgment as a matter of law on each of these claims.

#### A.   <u>Legal Standards for Summary Judgment</u>

Summary judgment is not a disfavored procedural shortcut; rather, where appropriate, it furthers the just and speedy determination of an action. *Celotex Corp. v. Catrett,* 477 U.S. 317, 327 (1986). Summary judgment is appropriate where the moving party shows that no genuine issue exists as to any material fact. *Devereaux v. Abbey,* 263 F.3d 1070, 1076 (9th Cir. 2001) (en

Page 8 – DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT

Jackson Lewis P.C.
200 SW Market St. Ste. 540
Portland OR 97201
(503) 229-0404 | (503) 229-0405
(fax)

banc).  A defendant need not negate a plaintiff's claims, but only establish a lack of evidence to support them.  *Celotex,* 477 U.S. at 322; *Devereaux*, 263 F.3d at 1076 (citing *Fairbank v. Wunderman Cato Johnson*, 212 F.3d 528, 532 (9th Cir. 2000)).  Once a defendant satisfies its burden, a plaintiff may not rest on mere allegations or denials but must present evidence showing a triable issue of fact.  *Id.*  To sustain his burden, Plaintiff must adduce relevant, admissible evidentiary matter setting forth specific facts based on personal knowledge.  Fed. R. Civ. P. 56(e).  When, as here, Plaintiff cannot meet this burden, summary judgment must be granted.

### B.     Plaintiff's Medical Leave Claims Fail as a Matter of Law

In his first and fourth causes of action, Plaintiff alleges that Old Dominion "denied, interfered with, or discriminated or retaliated" against him for using leave covered by the Family Medical Leave Act (FMLA) or Oregon Family Leave Act (OFLA).  Compl. ¶¶ 51, 62.

As a threshold matter, Plaintiff admits that Old Dominion never denied him any leave covered by the FMLA or OFLA.  He testified:

> "Q:     Do you agree with me that, at least under the FMLA [and] the twelve weeks that [it] allows – you got all of the leave that you had requested because of your medical condition?
>
> "A:     Yes."

Stillwell Dep. at 125:13-17.  Second, Plaintiff admits that Old Dominion never interfered with his ability to take FMLA or OFLA leave:

> "Q:     And no one at Old Dominion interfered with your ability to take those 12 weeks of leave?
>
> "A:     No."

*Id.* at 125:18-20.  Accordingly, Defendant interprets Plaintiff's allegation to be limited to his assertion that Old Dominion retaliated against him by terminating his employment in June 2018

Page 9 – DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT

Jackson Lewis P.C.
200 SW Market St. Ste. 540
Portland OR 97201
(503) 229-0404 | (503) 229-0405
(fax)

because he took an approved FMLA/OFLA leave of absence between October 2017 and January 2018. To sustain his claim, Plaintiff must show that "the requesting or taking of protected leave was a 'negative factor' in the adverse employment decision." *Bachelder v. America West Airlines, Inc.*, 259 F.3d 1112, 1124 (9th Cir. 2001).

Although an employer may not use FMLA leave as a negative factor in an employment decision, "[n]o cause of action exists . . . if termination is the result of the employee's own performance problems." *Melani v. Chipotle Servs., LLC*, 2019 U.S. Dist. LEXIS 227041, at *70 (D. Or. Sep. 4, 2019) (citing *Liston v. Nevada*, 311 F. App'x 1000, 1002 (9th Cir. 2009). *See also Lawson v. Walgreen Co.*, 2009 U.S. Dist. LEXIS 25441, at *15 (D. Or. Mar. 20, 2009) ("[E]mployees who avail themselves of their rights under FMLA are not entitled to greater rights to benefits or conditions of employment than other employees."); OAR 839-009-0270(5)(c) (similar).

Here, the undisputed evidence establishes that Plaintiff was terminated because of his own performance problems. The evidence simply does not permit a reasonable inference that Plaintiff's FMLA/OFLA leave was a factor in the termination decision. *Accord Kelly v. Boeing Co.*, 400 F. Supp. 3d 1093, 1112 (D. Or. 2019) ("Kelly has not shown and cannot show that he would have been entitled to his position of employment had he not taken leave because he would have been terminated under the Last Chance Agreement regardless of whether he had requested leave."). The evidence establishes, without dispute, Plaintiff would have been terminated for the conduct forming the employee complaints regardless of Plaintiff's medical leave of absence.

### C. Plaintiff's Failure-to-Accommodate Claims Fail as a Matter of Law

Plaintiff alleges in his Complaint that Defendant failed to make reasonable accommodations for his disability. Compl. ¶¶ 54, 70. However, Plaintiff's suggestion that Old

Page 10 – DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Jackson Lewis P.C.
200 SW Market St. Ste. 540
Portland OR 97201
(503) 229-0404 | (503) 229-0405
(fax)

Dominion denied him a requested accommodation is contradicted by his own admissions.  In his deposition, Plaintiff clarified that he never requested any accommodation, other than the leave of absence and the temporary modified schedule, which Old Dominion approved.  Indeed, Plaintiff admitted that both Lorenzini and Goodrich informed him, upon his return from leave: "Whatever you need, you can take that.  I just want you to get back to work." Stillwell Dep. at 130:14-21.

The general rule is that an employee "must make an initial request" to alert the employer to an accommodation need.  *Wessels v. Moore Excavation, Inc.*, 2016 U.S. Dist. LEXIS 52639, at *48 (D. Or. Apr. 18, 2016).  If an employee never communicates the need for a particular accommodation, no duty to accommodate arises.  *Id.* ("Plaintiff's accommodation claim fails because he never communicated a need for accommodation and Defendant was unaware of any need for accommodation.").  Because Plaintiff never communicated any accommodation need, Old Dominion was not obligated to initiate a discussion about accommodations.  *Id.* at *53 ("[I]t is incumbent upon the ADA plaintiff to assert not only a disability, but also any limitation resulting therefrom.").

### D. Plaintiff's Discrimination/Retaliation Claims Fail at a Pretext Level

Plaintiff alleges that Old Dominion discriminated or retaliated against him because of his disability and, relatedly, because he requested an accommodation in the form of time away from work.  Compl. ¶¶ 56, 59, 70, 73.  Under either theory, Plaintiff must present either direct evidence or sufficient circumstantial evidence to satisfy the four-pronged test set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  Plaintiff concedes he has no direct evidence of discriminatory intent.  Stillwell Dep. at 125:21-127:3; 130:17-23.

Because Plaintiff has no direct evidence of discrimination, he must proceed under the burden-shifting analysis.  To satisfy his prima facie case, Plaintiff must show that: (1) he is

Page 11 – DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Jackson Lewis P.C.
200 SW Market St. Ste. 540
Portland OR 97201
(503) 229-0404 | (503) 229-0405
(fax)

disabled within the meaning of the ADA; (2) he was a "qualified individual" as defined by the ADA; (3) he suffered an adverse employment action on the basis of his disability. *Nunes v. Wal-Mart Stores, Inc.*, 164 F.3d 1243, 1246 (9th Cir. 1999). Plaintiff's third and seventh claims based on retaliation for requesting accommodations follow the same analysis as the ADA claim. *Mejia v. Lamb Weston*, 2020 U.S. Dist. LEXIS 10632, at *16 (D. Or. Jan. 22, 2020).

If Plaintiff satisfies his prima facie burden, Defendant is obligated to articulate a legitimate, non-discriminatory rationale for the challenged employment action. *Texas Dept. of Comm. Affairs v. Burdine*, 450 U.S. 248, 254-55 (1981); *Wallis v. J.R. Simplot Co.*, 26 F.3d 885, 889-90 (9th Cir. 1994). Once Defendant makes this showing, the ultimate burden of persuasion returns to Plaintiff, to present clear and substantial evidence of falsity or pretext. *Cornwell v. Electra Cent. Credit Union*, 439 F.3d 1018, 1029 (9th Cir. 2006).

### 1. **No Evidence Supports an Argument that Plaintiff's Termination was Pretextual**

For purposes of this Motion, Defendant concedes that Plaintiff can articulate a prima facie case. Old Dominion, however, has no difficulty articulating a legitimate non-discriminatory justification for Plaintiff's termination. Plaintiff was first warned then terminated based on multiple, repeated complaints that he violated Old Dominion's culture and core values including the expectation on management-level employees that they treat each other with professionalism, courtesy, and respect. *Accord Phipps v. Gary Drilling Co.*, 722 F. Supp. 615, 621 (E.D. Cal. 1989) ("Poor work performance, including violations of company policy, certainly would constitute ample justification for disciplining or terminating employees without running afoul of the proscriptions of either state or federal age discrimination laws.").

Plaintiff must rebut Defendant's reason for his termination by producing "specific, substantial evidence of pretext." *Godwin v. Hunt Wesson, Inc.*, 150 F.3d 1217, 1221-22 (9th Cir.

Page 12 – DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

**Jackson Lewis P.C.**
200 SW Market St. Ste. 540
Portland OR 97201
(503) 229-0404 | (503) 229-0405
(fax)

1998); *Bradley v. Harcourt, Brace & Co.*, 104 F.3d 267, 270 (9th Cir. 1996). A plaintiff is entitled to a trial on the merits only if he presents specific and substantial evidence that the employer's proferred motives were not the actual motives because they are inconsistent or otherwise not believable. *Godwin*, 150 F.3d at 1221. Merely denying the credibility of the employer's proferred reasons is insufficient. *Lindsey v. Shalmy*, 29 F.3d 1382, 1385 (9th Cir. 1994). Similarly, speculation and unfounded accusations are insufficient to create a triable issue. *Carmen v. San Francisco Unified Sch. Dist.*, 237 F.3d 1026, 1028 (9th Cir. 2001). Here, Plaintiff cannot demonstrate that Old Dominion's proferred reasons for his termination are unbelievable or unworthy of credence. Nor can Plaintiff point to a comparable employee outside his protected class who was treated more favorably by the Company. In short, summary judgment in Old Dominion's favor is appropriate on Plaintiff's discrimination and retaliation claims.

### 2. Delaying Plaintiff's Transfer Was Neither an Adverse Action nor a Pretext for Discrimination

Plaintiff has argued that the delay in transferring him to the RLM position was also discriminatory. The record indicates that:

1) Old Dominion tentatively planned to transfer Plaintiff to RLM in 2017, but the transfer was delayed due to, first, staffing issues and, second, Plaintiff's absence from work between October 2017 and February 2018.

2) On February 27, 2018, Stillwell contacted Morris to inquire about setting a time to effectuate the transfer. Morris did not respond because various internal steps were required to make that happen and Morris was under no deadline to fill the role.

3) Based on Morris's lack of response, on May 15, 2018, Stillwell again contacted Morris to inquire about a time frame to assume the new role.

Page 13 – DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT

Jackson Lewis P.C.
200 SW Market St. Ste. 540
Portland OR 97201
(503) 229-0404 | (503) 229-0405
(fax)

4) As of April 19, 2018, Stillwell was on a final warning, so, when Morris was presented with Stillwell's inquiry in May 2018, he decided to delay the transfer for another calendar quarter based on his concern with transferring an employee on a final warning. Plaintiff acknowledges it would be appropriate to delay an employee's transfer if the employee was on a final warning. Stillwell Dep. at 102:21-103:1. The transfer never occurred, obviously, because Plaintiff's employment was terminated.

Based on the foregoing, Plaintiff's assertion that the delayed transfer gives rise to a discrimination claim fails for two reasons. First, at the prima facie level, the evidence establishes that Stillwell's anticipated transfer was lateral in nature, not a promotion. The denial of a lateral transfer is not an adverse employment action. *See Morrow v. City of Oakland*, 2012 U.S. Dist. LEXIS 81318, at *32 (N.D. Cal. 2012) ("As the terms and conditions of plaintiff's employment did not objectively change for the worse as a result of her lateral transfer or defendant's denial of her requests, it was not an adverse employment action as a matter of law."). *Torres v. City of Oakland*, 2017 U.S. Dist. LEXIS 147630, at *48 (N.D. Cal. Sep. 12, 2017) ("the Court finds no authority that suggests that Defendants' delay in appointing a deputy chief or their failure to extend the Eligibility List are adverse employment actions"); *Peterson v. Cal. Dep't of Corr. & Rehab.*, 542 F. App'x 553, 554 (9th Cir. 2013) ("Peterson's contention concerning whether a promotion delay or denial constitutes an adverse employment action is unavailing.").

Second, at a pretext level, Plaintiff cannot produce competent evidence to rebut Morris's explanation for his decisions related to the timing of the transfer. There was a tentative plan to transfer Plaintiff to RLM, but Morris was under no deadline to do so and effectuating that transfer required internal logistics that simply did not happen prior to Plaintiff receiving the final warning. After the final warning, Morris appropriately delayed Plaintiff's transfer to ensure

Page 14 – DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

**Jackson Lewis P.C.**
200 SW Market St. Ste. 540
Portland OR 97201
(503) 229-0404 | (503) 229-0405
(fax)

Plaintiff successfully worked through the issues giving rise to the warning before moving Plaintiff to a new role. There are simply no facts at issue that reasonably suggest a discriminatory motive.

### E. Plaintiff's Family Relationship Discrimination Claim Fails as a Prima Facie Level

ORS 659A.309 makes it unlawful to discharge an employee "solely because another member of an individual's family works or has worked for that employer." A "family member" includes various familial relations, but does not include the boyfriend of Plaintiff's daughter.

While Plaintiff alleges that his termination was motivated by "his family member working for Defendant," Compl. ¶ 76, he clarified in his deposition that the purported family member was actually his stepdaughter's boyfriend. Stillwell Dep. at 109:20-21 ("He wasn't a son-in-law at that time, nothing. He was just a person dating my daughter."). Consequently, Plaintiff's family-relationship discrimination claim fails.

Additionally, even if Plaintiff's daughter's boyfriend could have been construed to be Plaintiff's family member, ORS 659A.309 does not prohibit the challenged employment action. The statute provides that an employer is *not* barred from discharging an employee if doing so would avoid placing an employee in a position of exercising supervisory authority over a family member. ORS 659A.309(2)(c). Because Plaintiff acknowledges he had supervisory authority over the Portland Service Center's Dockworkers, including his daughter's boyfriend, Plaintiff cannot state a prima facie case of discrimination.

Further, even if Plaintiff could state a prima facie case, his claim fails because he cannot create an issue of fact as to pretext. *See* discussion *supra*.

### F. **Plaintiff's Wrongful Discharge Claim is Precluded by Statutory Remedies**

Finally, Plaintiff's Complaint includes a common law wrongful discharge claim, *see* Compl. ¶¶ 78-80, which is duplicative of and precluded by adequate statutory remedies. *See Rinallo v. CAPSA Solutions, LLC*, 222 F. Supp. 3d 927, 933 (D. Or. 2016) (citing cases). The common law claim should be dismissed as a matter of law.

## IV. CONCLUSION

Based on the foregoing, Defendant respectfully request this Court grant the instant Motion for Summary Judgment in its entirety.

DATED: April 9, 2021.

Respectfully submitted,

JACKSON LEWIS P.C.

By: s/ Mark Crabtree
Mark Crabtree, OSB #015070
crabtreem@jacksonlewis.com
Attorneys for Defendant

# DECLARATION OF SERVICE

I hereby certify that I served the foregoing **DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** via:

- ☐ Electronic Mail
- ☐ US Postal Service
- ☒ CM/ECF
- ☐ Facsimile Service
- ☐ Hand Delivery
- ☐ UPS

as follows on the date stated below:

Robert K. Meyer, OSB No. 086470
Michael Owens, OSB No. 104720
MEYER STEPHENSON
1 SW Columbia St Ste 1850
Portland, OR 97204
robert@oregonworkplacelaw.com
mike@oregonworkplacelaw.com

*Attorneys for Plaintiff*

DATED this 9th day of April, 2021.

By: s/ Delores Petrich
Delores Petrich

4812-8324-3236, v. 1

Page 17 – DECLARATION OF SERVICE

**Jackson Lewis P.C.**
200 SW Market St. Ste. 540
Portland OR 97201
(503) 229-0404 | (503) 229-0405
(fax)