# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **KELLY STILLWELL**, | Case No. 3:19-cv-1789-SI |
| Plaintiff, | **OPINION AND ORDER** |
| v. | |
| **OLD DOMINION FREIGHT LINE, INC.,** | |
| Defendant. | |

Robert K. Meyer and Michael Owens, MEYER STEPHENSON, One SW Columbia Street, Suite 1850, Portland, Oregon 97204. Of Attorneys for Plaintiff.

Mark Crabtree, JACKSON LEWIS PC, 200 SW Market Street, Suite 540, Portland, Oregon 97201. Of Attorneys for Defendant.

**Michael H. Simon, District Judge.**

Plaintiff Kelly Stillwell (Stillwell) brings this lawsuit against his former employer, Defendant Old Dominion Freight Line, Inc. (Old Dominion). Stillwell alleges that Old Dominion unlawfully discriminated and retaliated against him because of his disability and his taking of medical leave. Stillwell took medical leave in late 2017 and early 2018, after suffering an esophageal spasm, which later required the removal of his esophagus. Stillwell returned to work in late January 2018 but shortly thereafter needed additional medical leave. Old Dominion gave Stillwell all the medical leave that he requested. In April 2018, however, Old Dominion issued a

written "final warning" to Stillwell, without ever having previously disciplined Stillwell or issued him any earlier warning. On June 5, 2018, Old Dominion terminated Stillwell's employment. In this lawsuit, Stillwell asserts federal claims under the Family Medical Leave Act (FMLA) and the Americans with Disabilities Act (ADA). Stillwell also asserts several state statutory claims under the Oregon Family Leave Act (OFLA), the Oregon Sick Leave Act (OSLA), and the Oregon Fair Employment Practice Act (OFEPA). The OFEPA prohibits discrimination based on disability, among other things. Finally, Stillwell asserts a state common law wrongful discharge claim. Old Dominion has moved for summary judgment against all claims. Stillwell opposes Old Dominion's motion for summary judgment on all claims except his claim under Oregon's family relationship discrimination statute, which he concedes should be dismissed. Accordingly, the Court dismisses Stillwell's Eighth Claim, alleging family relationship discrimination. For the reasons discussed below, the Court denies Defendant's Motion for Summary Judgment on all other claims.

## STANDARDS

A party is entitled to summary judgment if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party has the burden of establishing the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The court must view the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in favor of the nonmoving party. *Clicks Billiards Inc. v. Sixshooters Inc.*, 251 F.3d 1252, 1257 (9th Cir. 2001). Although "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . ruling on a motion for summary judgment," the "mere existence of a scintilla of evidence in support of the plaintiff's position [is] insufficient . . . ." *Anderson v. Liberty Lobby,*

*Inc.*, 477 U.S. 242, 252, 255 (1986). "Where the record taken as a whole could not lead a rational

trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Matsushita Elec.*

*Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation and quotation marks

omitted).

## BACKGROUND

Old Dominion is a national transportation solutions company headquartered in North

Carolina. Old Dominion operates a service center in Portland, Oregon, among other places. In

March 2009, Old Dominion hired Stillwell as its Outbound Operations Manager at the Portland

Service Center. In 2011, Old Dominion promoted Stillwell to Portland Line Haul Manager. In

August 2013, Old Dominion promoted Stillwell to the position of Assistant Service Center

Manager, where he supervised between 65 to 145 employees. Throughout his employment at Old

Dominion, Stillwell reported to Jeff Lorenzini (Lorenzini), the Portland Service Center Manager.

Lorenzini reported to Northwest Regional Vice President Scott Goodrich (Goodrich).

In February 2017, Old Dominion created a new Regional Linehaul Manager position,

responsible for managing regional linehaul dispatch operations and reporting directly to Hugh

Morris, Old Dominion's nationwide Vice President of Transportation. In April 2017, Stillwell

interviewed for that position and was selected. The parties dispute whether Stillwell's promotion

to this new position depended on Old Dominion hiring and training a replacement for Stillwell's

position as Assistant Service Center Manager.

On October 5, 2017, Stillwell experienced a sudden esophageal illness that required

emergency medical treatment. In an email exchange between Morris and Lorenzini on October 9,

2017 about how Stillwell's illness might affect his promotion to Regional Linehaul Manager,

Lorenzini said to Morris, "If you're still ready, I'd say [Stillwell] ought to be ready to go by the

week of [October] 23rd or the 30th." Morris replied that he would prefer a start date of

January 1, 2018, to align with the beginning of a new quarter. Unfortunately, Stillwell's recovery took longer than expected.

From October 6, 2017 through January 23, 2018, Stillwell was on medical leave. He did not use paid sick leave during this time, and instead received his full salary from Old Dominion, including, eventually, long-term disability benefits. Stillwell returned to work on a reduced schedule on January 24, 2018. Stillwell's doctor recommended that Stillwell work no more than six hours in a day during his first week back, followed by no more than eight hours a day during his second week, and no more than ten hours a day during his third week. Stillwell was in the same role as before his illness and continued to report to Lorenzini. Goodrich remained Plaintiff's second-level manager.

Upon Stillwell's return to work in late January 2018, both Lorenzini and Goodrich told Stillwell that he should work only as much as he could handle. Stillwell took intermittent time off for medical treatment until April 2, 2018, and Old Dominion fully accommodated Stillwell's requests for leave. On February 28, 2018, Stillwell inquired with Morris about the promotion to Regional Linehaul Manager. Morris was noncommittal but now states that he declined to make the transfer at that time because Stillwell did not yet have a full release from his doctor. Morris, however, did not communicate that reason to Stillwell or ask Stillwell for medical documentation showing that he was ready and able to work in the new position.

On March 22 and 23, 2018, Stillwell informed Lorenzini that he needed additional medical treatment that would temporarily require Stillwell to go off his medications, which Stillwell explained would affect his mood. In an email, Stillwell asked Lorenzini to "forgive him" in advance for being "grumpy" because of his temporary cessation of medication. Until this time, Old Dominion had never disciplined or issued any warnings to Stillwell. To the contrary, as

recounted above, Old Dominion had twice earlier promoted Stillwell and recently offered him a third promotion.

Dan Marsh (Marsh) and Nic Hanson (Hanson) are two employees of Old Dominion who reported directly to Stillwell. In late 2017 and early 2018, they often filled in when Stillwell was out for medical procedures or leave. Stillwell's absences for medical appointments or leave caused both Hanson and Marsh some level of displeasure, which Hanson communicated to Old Dominion.

On March 27 and March 28, 2018, Old Dominion's Northwest Regional Vice President Goodrich and Old Dominion's Regional Human Resources Manager Tom Lillywhite (Lillywhite) visited the Portland Service Center. Old Dominion has given multiple inconsistent explanations for why Goodrich and Lillywhite visited that facility at that time. For example, Old Dominion's counsel characterizes the visit as a "standard visit" made to each of Old Dominion's major service centers. Goodrich told Lorenzini that the visit was because there had been growth and staff changes in the region. Lillywhite, however, testified that the managers travelled to Portland to investigate an "anonymous complaint" that Lorenzini was imposing improper sales conditions. After they arrived, Goodrich and Lillywhite provided a specific list of employees whom they asked to interview. This list included many of Stillwell's direct subordinates, who made certain negative comments about Stillwell's behavior. These comments, reflected in contemporaneous notes taken by Lillywhite, included comments that Stillwell had belittled, degraded, or yelled at certain Old Dominion employees whom he supervised.

Goodrich and Lillywhite then prepared a "final" written warning to Stillwell, conveying the complaints they had gathered. Lorenzini delivered to Stillwell this written warning, known as an "Internal Review Form" (IRF). The IRF stated that Stillwell had "belittled and degraded"

certain Old Dominion employees, "called out" a manager in a meeting, and raised his voice at an

employee. The IRF concluded:

> This is a FINAL IRF. Any further instances of poor job
> performance, failure to follow company policies, practices,
> guidelines, procedures, instructions, or standards of behavior *will
> result in termination of employment*.

ECF 30-1 at 9 (Owens Decl., Ex. 5) (emphasis added).

No one from Old Dominion, however, interviewed Stillwell before Old Dominion issued

its "final" warning to Stillwell. Further, not interviewing Stillwell appears to have been contrary

to Old Dominion's "guidelines," albeit unwritten, at least when viewing the facts in the light

most favorable to the nonmoving party. As Old Dominion's Regional Human Resources

Manager Lillywhite, explained during his deposition:

> Q.     Okay. So[,] do you have any specific rules or procedures
> that you follow in every investigation that you conduct at Old
> Dominion in investigating allegations of employee misconduct?
>
> A.     I would say as far as guidelines go, you know,
> understanding and speaking to *the parties involved* as to what has
> happened is important, understanding the facts as to what is being
> said, who it's being said about, and gathering as much information
> as possible are the key points I think in any investigation.

ECF 36-5 at 8 (Lillywhite Tr. 11:4-14 (emphasis added)).

In addition, Old Dominion's Northwest Regional Vice President Goodrich testified

during his deposition as follows:

> Q.     . . . Do you remember any managers getting a final warning
> for yelling at another employee other than Mr. Stillwell?
>
> A.     No.
>
> Q.     Do you remember other employees getting -- other
> management employees getting issued a warning short of a final
> warning for yelling at another employee?
>
> A.     No, I don't recall.

ECF 36-4 at 17-18 (Goodrich Tr. 54:20-55:3).

Further, again viewing the facts in the light most favorable to the nonmoving party and finding all reasonable inferences in favor of the nonmoving party, giving an employee a "final" warning without having given any previous warnings to that employee also was unusual at Old Dominion. Old Dominion's Vice President of Transportation, Scot Edwards (Edwards), gave the following deposition testimony:

> Q.    Do you generally give a final notice as the first disciplinary action when you're disciplining someone for performance?
>
> A.    I personally have never done that.

ECF 36-3 at 12 (Edwards Tr. 40:4-7).

Two months later, on May 25, 2018, Malena Winborne, Old Dominion's Human Resources Manager at the Portland Service Center, notified Lillywhite of another complaint about Stillwell's behavior toward Old Dominion employee Nic Hanson. Winborne also stated that other employees had expressed to Winborne their frustrations with Stillwell. Two days later, Lillywhite interviewed Hanson about his complaint. Hanson said that Stillwell had "belittled him in front of others" when Stillwell confronted Hanson about Hanson's failure to clean a barbecue grill that Stillwell had asked Hanson to clean. Hanson's version of this event was confirmed by Dan Marsh, who witnessed the interaction. In response, Lillywhite elevated the issue to Goodrich and Deedee Cox, Old Dominion's Director of Human Resources Development. Old Dominion terminated Stillwell's employment on June 5, 2018.

## DISCUSSION

In this lawsuit, Stillwell asserts the following claims against Old Dominion:

(1)    FMLA Interference, 29 U.S.C. § 2615;

(2)    ADA Disability Discrimination, 42 U.S.C. § 12112;

(3)    ADA Disability Retaliation, 42 U.S.C. § 12203;

(4)    OFLA Leave Interference, ORS § 659A.183;

(5)    OSLA Discrimination, ORS § 653.641;

(6)    OFEPA Disability Discrimination, ORS § 659A.112;

(7)    OFEPA Disability-Related Retaliation, ORS § 659A.109;

(8)    OFEPA Family Relationship Discrimination,
       ORS § 659A.309; and

(9)    Wrongful Discharge in Violation of Public Policy.

ECF 1 (Complaint).

In response to Defendant's Motion for Summary Judgment, Stillwell concedes that his Eighth Claim, alleging Family Relationship Discrimination, should be dismissed. Accordingly, the Court grants Defendant's motion for summary judgment against Plaintiff's Eighth Claim. The Court next proceeds to discuss Defendant's motion against Stillwell's remaining claims.

**A.  Interference with Medical Leave (Claims 1 and 4)**

In his First and Fourth Claims, Stillwell alleges that Old Dominion "denied, interfered with, or discriminated or retaliated" against him for using leave covered by the FMLA and the OFLA. Courts construe the OFLA "to the extent possible in a manner that is consistent with any similar provisions of" the FMLA. ORS § 659A.186(2); *see also Sanders v. City of Newport*, 657 F.3d 772, 783 (9th Cir. 2011) ("In light of these similar statutory and regulatory provisions, the district court properly applied the same legal standards under FMLA to Sanders's OFLA claim."). As discussed below, a different test is applied to interference claims than to discrimination and retaliation claims, and the Court must identify the proper claim before it can determine which test applies and whether the party has met its burden on summary judgment.

### 1. Plaintiff's FMLA and OFLA Claims

The OFLA does not explicitly provide a cause of action for "interference."[1] Old

Dominion argues that it granted Stillwell all the medical leave that he sought, so his claim must

be only for retaliation, which should be analyzed under the *McDonnell Douglas* discrimination

framework discussed below. Stillwell responds that subjecting an employee to negative

consequences for using FMLA or OFLA leave is a form of unlawful interference, which is

distinct from a retaliation and discrimination claim.

> Although often styled as "retaliation" claims, allegations that a
> plaintiff was fired for taking leave are analyzed as claims for
> "interference" with FLMA [sic] or OFLA rights. To assert a
> "discrimination" or "retaliation" claim under the FMLA or OFLA,
> a plaintiff must assert that he or she opposed a practice prohibited
> by the statute or participated in proceedings under the statute.

*Carter v. Fred Meyer Jewelers, Inc.*, 2019 WL 2744190, at *3 (D. Or. Apr. 10, 2019) (internal

citations omitted), *R&R adopted*, 2019 WL 3206831 (D. Or. July 16, 2019). An interference

claim is supported if the use or attempted use of leave was a "negative factor" in the decision to

take adverse action. *See Bachelder v. Am. W. Airlines, Inc.*, 259 F.3d 1112, 1122 (9th Cir. 2001)

(discussing FMLA).

Several cases, however, have held that no cause of action for interference exists under the

OFLA. These cases rest on a single assertion in one District of Oregon case from 2007.[2] The

---

[1] The OFLA provides: "It is an unlawful practice for a covered employer to: (1) Deny family leave to which an eligible employee is entitled under ORS § 659A.150 to 659A.186; or (2) Retaliate or in any way discriminate against an individual with respect to hire or tenure or any other term or condition of employment because the individual has inquired about the provisions of ORS § 659A.150 to 659A.186, submitted a request for family leave or invoked any provision of ORS § 659A.150 to 659A.186." ORS § 659A.183.

[2] *See Fillman v. Officemax, Inc.*, 2007 WL 2177930, at *8 (D. Or. July 27, 2007) ("Unlike FMLA, OFLA does not provide a cause of action for 'interference' with an [ ] employee's ability to request OFLA leave or for retaliation against an employee for having made an OFLA request."); *but see Fillman*, 2007 WL 2177930 at *12 n.7 (citing *Alexander v. Eye*

Oregon Supreme Court has not yet addressed this issue. Only one decision from the Oregon

Court of Appeals has substantively addressed what remedies the OFLA provides for discharge

motivated by the plaintiff's invocation of rights under the OFLA, including inquiring about or

requesting leave. *See Yeager v. Providence Health Sys. Or.*, 195 Or. App. 134, 138-39 (2004).

On a motion to dismiss, after finding that the plaintiff could bring a "retaliation" claim for her

termination after inquiring about and submitting a request for protected leave, the court held that

the plaintiff had alleged facts supporting her claim when she alleged that her termination

followed soon after her protected activity. *Id.* The court did not explain what specific test it

followed, but the test appears to be closer to the "negative factor" test than to the burden shifting

framework of *McDonnell Douglas*. That court also did not analyze whether a cause of action for

"interference" existed or how the OFLA should be interpreted relative to the FMLA with respect

to an interference claim.

    A majority of decisions in the District of Oregon, however, have concluded that the

OFLA includes a cause of action for interference.[3] These cases largely reach this result with

---

*Health Nw., P.C.*, 2006 WL 2850469 (D. Or. Oct. 3, 2006) which found that the OFLA contains
an interference cause of action, but not a retaliation cause of action, and recognized that this
finding conflicted with the language in *Yeager v. Providence Health Sys. Or.*, 195 Or. App. 134
(2004); *see also Magee v. Trader Joe's Co.*, No. 3:18-CV-01956-AC, 2020 WL 9550008, at *20
(D. Or. Sept. 1, 2020), *report and recommendation adopted in part,* 2021 WL 1550336 (D. Or.
Apr. 20, 2021) (citing *Young Bolek* for the proposition that no cause of action for interference
existed under OFLA); *Young Bolek v. City of Hillsboro*, 2016 WL 9455411, at *18 (D. Or.
Nov. 14, 2016) (citing *Fillman* for the proposition that no cause of action for interference exists
under the OFLA).

   [3] *See, e.g., Carter*, 2019 WL 2744190 at *4 ("FMLA and OFLA claims will survive
summary judgment if there is a triable issue of material fact as to whether the employee's FMLA
leave request was impermissibly considered as a factor in the employee's termination.");
*Ambrose v. J.B. Hunt Transp., Inc.,* 2014 WL 585376, at *9-11 (D. Or. Feb. 13, 2014)
(evaluating OFLA interference claim by reference to FMLA); *Dean v. Safeway, Inc.*, 2014 WL
6473543 (D. Or. Nov. 18, 2014) (evaluating FMLA and OFLA interference in tandem under
FMLA law); *McCauley v. ASML US, Inc.*, 917 F. Supp. 2d 1143, 1152 (D. Or. 2013) (noting that
the parties agreed the OFLA claim tracked the FMLA analysis, and analyzing Plaintiff's

minimal analysis, highlighting either the parties' agreement that the OFLA and FMLA claims are coterminous or looking to the OFLA's text directing that it be interpreted with reference to the FMLA.

One case, however, provides analysis supporting the majority position in this District that an OFLA claim rooted in facts constituting an interference claim under the FMLA also may be properly brought as an interference claim under the OFLA. *See Rogers v. Or. Trail Elec. Consumers Co-op., Inc.*, 2012 WL 1635127, at *20, *24 n.6 (D. Or. May 8, 2012). In *Rogers*, the court first explained the landscape of interference and discrimination/retaliation claims under the FMLA. An interference claim, the court explained, may be brought when a plaintiff alleges facts showing that the protected activity, *i.e.*, taking protected leave, was a "negative factor" in an adverse employment action. *Id.* at *18 (citing *Bachelder*, 259 F.3d at 1125). A discrimination or retaliation claim, meanwhile, may be brought when a plaintiff alleges facts showing that the plaintiff opposed an unlawful practice under the FMLA or participated in proceedings under the statute.[4] In *Rogers* the court explained that the terms "retaliation" and "discrimination" were used interchangeably in the FMLA in reference to conduct constituting a claim for FMLA

---

interference claim under the FMLA); *Larmanger v. Kaiser Found. Health Plan of the Nw.*, 895 F. Supp. 2d 1033, 1045 n.5 (D. Or. 2012), *aff'd*, 585 F. App'x 578 (9th Cir. 2014) (noting that the parties agreed the OFLA claim tracked the FMLA analysis, and analyzing Plaintiff's interference claim under the FMLA).

[4] *See Rogers*, 2012 WL 1635127 at *18 (citing 29 U.S.C § 2615(l)(b)); *Shepard v. City of Portland*, 829 F. Supp. 2d 940, 952 (D. Or. 2011); *Benz v. West Linn Paper Co.*, 803 F. Supp. 2d 1231, 1249 (D. Or. 2011) ("The Ninth Circuit recognizes three types of claims under the FMLA: (1) interference claims, when an employer interferes with an employee's exercise of rights under the FMLA, 29 U.S.C. § 2615(a)(1); (2) retaliation claims, when an employer discriminates against an employee for instituting or participating in proceedings or inquiries under FMLA, 29 U.S.C. § 2615(b); and (3) discrimination claims, when an employer discriminates against an employee for opposing any practice prohibited by the FMLA, 29 U.S.C. § 2615(a)(2).") (citing *Bachelder*, 259 F.3d at 1124).

interference and that given the OFLA's directive to construe similar provisions with the FMLA,

use of the terms "discrimination" and "retaliation" in the OFLA created a cause of action for

conduct that would constitute interference under the FMLA. *Id.* at *19. This analysis and the

accompanying body of case law in accord guide the Court's decision here.

### 2. "Negative Factor" Analysis

An employer "cannot use the taking of FMLA leave as a negative factor in employment

actions, such as hiring, promotions or disciplinary actions." *Bachelder*, 259 F.3d at 1122

(emphasis omitted, quoting 29 C.F.R. § 825.220(c)). Courts have found that, even when there is

some evidence of another reason to terminate a plaintiff, a claim for interference may survive if

there is evidence to suggest that the protected leave was a negative factor. *Schultz v. Wells Fargo*

*Bank, Nat'l Ass'n*, 970 F. Supp. 2d 1039, 1055-56 ( D. Or. 2013) (negative performance reviews

contributed to evidence showing the plaintiff's leave was a "negative factor" when they were

issued soon after a plaintiff returned from leave). Temporal proximity, on top of other evidence,

may serve as circumstantial evidence that protected leave was a negative factor. *See Xin Liu v.*

*Amway Corp.*, 347 F.3d 1125, 1137 (9th Cir. 2003).

Old Dominion argues that "[n]o cause of action exists . . . if termination is the result of

the employee's own performance problems." *Melani v. Chipotle Servs., LLC*, 2019 WL 7879951,

at *22 (D. Or. Sep. 4, 2019) (citing *Liston v. Nevada*, 311 F. App'x 1000, 1002 (9th Cir. 2009)

*R&R adopted in part*, 2020 WL 362636 (D. Or. Jan. 21, 2020). The Court does not doubt that an

employer may terminate an employee for performance problems, and Stillwell does not dispute

that the law permits such action. The interference test asks simply whether the taking of

permissible leave was *a* negative factor, not *the only* factor.

Stillwell argues that he has provided enough evidence to establish a genuine issue on

whether his taking of medical or disability leave was a negative factor in Old Dominion's

decision not to promote him and also to terminate his employment. First, Stillwell argues that Morris rescinded Stillwell's promotion only four days after learning of Stillwell's disability leave, set a date that was well after the expected time of return, and then never again engaged in any discussion with Stillwell about the promotion. This shows, Stillwell argues, that his leave likely was a negative factor in Old Dominion's decision not to complete Stillwell's third promotion.

Second, Stillwell argues that there is some suggestion in the written warning that his "reliability" was a cause for the complaints from other employees that led to Stillwell's termination and that comment about to his "reliability" is a veiled reference to his taking of periodic disability leave. Stillwell has provided sufficient evidence of possible interference with his FMLA leave by showing that it was a "negative factor" in the written warning, which Old Dominion relied on in part in its decision to terminate Stillwell's employment.

Viewing the evidence in the light most favorable to the nonmoving party, a reasonable jury could find that Old Dominion considered Stillwell's medical or disability leave as a "negative factor" in the adverse employment actions taken against Stillwell. Accordingly, the Court denies Defendant's Motion for Summary Judgment on Count One (FMLA interference) and Count Four (OFLA interference).

**B.  Disability Discrimination and Retaliation (Claims 2, 3, 6, and 7)**

Stillwell alleges that Old Dominion discriminated against him because of his disability and the related time off and accommodations he sought, in violation of the ADA and ORS § 659A.112 (Oregon law prohibiting employment discrimination on the basis of disability). Stillwell also alleges that Old Dominion retaliated against him on the same basis in violation of the ADA and ORS § 659A.109 (Oregon law prohibiting discrimination against workers seeking statutory benefits). Stillwell's ADA and Oregon discrimination and retaliation claims are

analyzed under the *McDonnell Douglas* burden-shifting framework. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973); *Brown v. City of Tucson*, 336 F.3d 1181, 1186-87 (9th Cir. 2003) (holding that claims for retaliation under the ADA are analyzed under the Title VII framework set forth in *McDonnell Douglas*); *Mejia v. Lamb Weston*, 2020 WL 363387, at *5 (D. Or. Jan. 22, 2020) (concluding that a claim for retaliation for invoking disability rights under Oregon law, in violation of ORS § 659A.109, follows the same analysis for such a claim brought under the ADA).

The applicable *McDonnell Douglas* framework requires a plaintiff first to establish a prima facie case of unlawful discrimination. If the plaintiff does that, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its challenged action. If the defendant does that, the plaintiff must then provide evidence showing that the defendant's articulated reason is pretext for discrimination. *See McGinest v. GTE Serv. Corp.,* 360 F.3d 1103, 1122 n.16 (9th Cir. 2004).

### 1. Prima Facie Case (Termination and Failure to Promote)

To satisfy his prima facie case, Stillwell must show that: (1) he is disabled under the ADA; (2) he was a "qualified individual" as defined by the ADA; and (3) he suffered an adverse employment action because of his disability. *Sanders v. Arneson Prods., Inc.*, 91 F.3d 1351, 1353 (9th Cir. 1996). Stillwell has alleged two adverse employment actions: failure to promote, and termination. Old Dominion concedes that Stillwell is disabled and is a qualified individual under the ADA, and can articulate a prima facie case based on the termination of his employment. Old Dominion, however, asserts that its decision not to proceed with Stillwell's promotion from Assistant Service Center Manager to Regional Line Haul Manager was not an adverse employment action.

Stillwell argues that the position was a promotion that he had been granted, and that Old Dominion's revocation of that promotion was an adverse action. As Regional Line Haul Manager, Stillwell would have "taken on increased responsibilities, going from overseeing operations at only one service center to managing regional linehaul operations at numerous service centers across multiple states." ECF 34 at 4. The new position also would have reported directly and more visibly to a more senior manager, Morris, within Old Dominion, and Morris worked closely with Scot Edwards, the Vice President of Transportation based at the company headquarters.

The Ninth Circuit has held that an adverse employment action is one that is "reasonably likely to deter employees from engaging in protected activity." *Ray v. Henderson*, 217 F.3d 1234, 1243 (9th Cir. 2000)[5]. In so finding, the Ninth Circuit considered a circuit split, in which Ninth Circuit precedent about the definition of an adverse action aligned with the expansive definition adopted by First, Seventh, Tenth, Eleventh, and D.C. Circuits. *Id.* at 1240-42. In these circuits, "a wide array of disadvantageous changes in the workplace constitute adverse employment actions," including lateral transfers, even with the same pay and status. *Id.* at 1240. This standard includes and subsumes the slightly less expansive "intermediate approach" taken in the Second and Third Circuits, in which an adverse employment action is "something that materially affects the terms and conditions of employment." *Id.* at 1242.

The parties do not dispute that the new position would have resulted in Stillwell reporting more directly to a more senior officer at Old Dominion and would have involved a greater scope

---

[5] The Ninth Circuit later discussed whether the holding in *Ray v. Henderson* provides an objective or subjective standard, finding that the EEOC standard on which the Ninth Circuit based its test provides for a partially subjective and partially objective standard. *Vasquez v. County of Los Angeles*, 349 F.3d 634, 645-46 (9th Cir. 2003). There is no genuine dispute here as to whether the failure to promote was both subjectively and objectively adverse.

of responsibility and visibility for Stillwell at the company. If Stillwell would have received the promotion that he states he was awarded, its denial or rescission would be reasonably likely to deter an employee in his position from engaging in protected activity. Thus, denying Stillwell the transfer to the Regional Linehaul Manager position, which he was promised or awarded, is an adverse employment action.

In response, Old Dominion offers two reasons why Stillwell was not entitled to the promotion. First, Old Dominion argues that it never promised or awarded Stillwell the position. Documentary evidence contradicts Old Dominion's argument that Stillwell was merely under consideration at the time of his disability leave. For example, on October 9, 2017, a few days after Plaintiff's disability onset and the beginning of his medical leave, Lorenzini (Plaintiff's immediate supervisor) emailed Morris, saying, "If you're still ready, I'd say [Stillwell] ought to be ready to go by the week of [October] 23rd or the 30th." Morris responded, "Let's do [January 1st] keep [quarters] straight." The parties agree that these emails were about Stillwell's pending transfer to the position of Regional Line Haul Manager. The phrasing in these emails suggests that Stillwell had been granted the promotion, and a reasonable juror could find as much. Viewing the facts in the light most favorable to Stillwell and giving Stillwell the benefit of all reasonable inference, Stillwell has at least established a genuine issue for trial.

Second, Old Dominion argues that the promotion was merely delayed, not denied and the relevant delay is, at most, the time between Stillwell's February 27, 2018 email to Morris asking about the promotion, and April 19, 2018, when Stillwell received the written "final" warning. A minor delay may not necessarily be an adverse action.[6] Stillwell, however, argues that the delay

---

[6] Old Dominion cites an unreported case in the Southern District of New York in which that court found that a two-month delay in promotion was not an adverse action. In *Jeffrey v. Montefiore Med. Ctr.*, 2013 WL 5434635, at *20 (S.D.N.Y. Sept. 27, 2013), the could held that a

began immediately after his illness onset and his leave began and that Old Dominion made no effort to work with Stillwell to advance the promotion at any point before his "final" warning. That, according to Stillwell, is an adverse employment action. Viewing the facts and reasonable inferences in the light most favorable to Stillwell, these are issues of fact that the jury, rather than the Court, must decide.

### 2.  Legitimate, Non-Discriminatory Reason for Adverse Employment Action

Because Stillwell satisfies his prima facie burden, Old Dominion must articulate a legitimate, non-discriminatory rationale for the challenged employment actions. *Texas Dep't of Comm. Affairs v. Burdine*, 450 U.S. 248, 254-55 (1981); *Wallis v. J.R. Simplot Co.*, 26 F.3d 885, 889-90 (9th Cir. 1994).

#### a.  Termination

Old Dominion has articulated a legitimate non-discriminatory justification for the termination of Stillwell's employment: that Stillwell violated Old Dominion's culture and core values, including the expectation on management-level employees that they treat each other with professionalism, courtesy, and respect, when Stillwell purportedly yelled at and belittled his subordinates. Stillwell does not dispute that this reason, if true, would be legitimate; instead,

---

two-month delay in a promotion was not an adverse action because "it is a failure to promote, not a failure to quickly promote that makes an employment action materially adverse." As discussed above, however, the Second Circuit has a different and more restrictive standard for finding an adverse employment action than the standard directed by the Ninth Circuit. Old Dominion also cites *Torres v. City of Oakland*, 2017 WL 4005467 (N.D. Cal. Sept. 12, 2017). In *Torres*, a Title VII racial discrimination case, the plaintiff alleged that his employer delayed filling a deputy chief position in a manner that caused a related eligibility list to expire, which affected the plaintiff's ability to be promoted. *Id.* at *8. In that case, the court explained that denying the plaintiff a promotion constituted an adverse employment action for which no legitimate, non-discriminatory reason had been articulated, but that a delay in filling a certain position, and a ripple effect on the plaintiff, did not constitute an adverse action. *Id.* at *15.

Stillwell argues that it is pretextual. The Court finds that Old Dominion has met its burden at this second step.

### b. Failure to Promote

Old Dominion also argues that even if the failure to promote Stillwell to the position of Regional Line Manager is an adverse employment action, that failure resulted from multiple legitimate, non-discriminatory factors. Among other things, Old Dominion argues that: Stillwell was not to be promoted until a replacement had been found, but no replacement had been found; Old Dominion intended to have Stillwell begin his new position at the beginning of the new quarter (January 1st), but Stillwell was on leave at the time; the time between Stillwell's return to work and his "final" warning was only a delay of promotion, and not an adverse employment action; and after Old Dominion issued its "final" warning to Stillwell, Old Dominion was justified in rescinding its decision to promote Stillwell. Again, Stillwell primarily argues that these statements by Old Dominion are pretextual. The Court finds that Old Dominion has met its burden at this second step.

### 3. Pretext

At this third step in the *McDonnell Douglas* analysis, the burden of persuasion returns to Stillwell, who must present specific and substantial evidence of falsity or pretext. *See Brown*, 336 F.3d at 1188. Specific and substantial evidence is sufficient evidence to raise a genuine issue of material fact under Rule 56(c) of the Federal Rules of Civil Procedure. *See Cornwell v. Electra Cent. Credit Union*, 439 F.3d 1018, 1029 (9th Cir. 2006). Pretext may be established: "(1) indirectly by showing that defendant's proffered explanation is unworthy of credence because it is internally inconsistent or otherwise not believable; or (2) directly, by showing that unlawful discrimination more likely motivated the defendant." *Whitley v. City of Portland*, 654 F. Supp. 2d 1194, 1207 (D. Or. 2009) (citation omitted); *see also Godwin v. Hunt Wesson, Inc.*,

150 F.3d 1217, 1220 (9th Cir. 1998). A plaintiff may rely in part on the same evidence that established his prima facie case. *See Chuang v. Univ. of Cal. Davis*, 225 F.3d 1115, 1127 (9th Cir. 2000) (holding that a plaintiff does not need to rely on additional independent evidence of discrimination when the evidence constituting his prima facie raises a genuine issue of fact regarding the truth of the employer's proffered reason). Here, Stillwell argues that the Court should deny summary judgment because he has provided both direct and indirect circumstantial evidence of discrimination that is sufficient to create a genuine issue of fact.

Stillwell argues that the timing of both the termination of his employment and the actions taken by Old Dominion on Stillwell's promotion establish a genuine issue of pretext. When an adverse action follows soon after protected activity, that temporal proximity offers circumstantial evidence of discriminatory intent. *See Lindsey v. Clatskanie People's Util. Dist.*, 140 F. Supp. 3d 1077, 1090 (D. Or. 2017) ("[T]emporal proximity between protected activity and adverse employment action, coupled with contemporaneous evidence of the employer's displeasure with the plaintiff, may serve as 'strong circumstantial evidence of retaliation.'") (quoting *Bell v. Clackamas County*, 341 F.3d 858, 866 (9th Cir.2003)).

Here, the adverse actions, both the alleged denial of promotion and the termination of employment, followed relatively shortly after Stillwell's disability onset and related medical leave. Old Dominion postponed Stillwell's new position only four days after learning about his illness and then pushed that promotion until a time well after when Stillwell first expected to be able to return to work and start in the new position. Also, Goodrich and Lillywhite's visit to the Portland Service Center occurred in March 2018, less than two months after Stillwell returned from his initial disability leave and while he was out on subsequent leave for more treatment. Old Dominion also offers inconsistent explanations for the purpose of that visit. Stillwell argues

that this visit, close in time to his protected activity, was conducted with the intention to create a pretext for denying Stillwell his promotion and terminating his employment. In addition, Old Dominion issued a "final" warning to Stillwell without (1) interviewing him (contrary to Old Dominion's practice) and (2) without giving Stillwell any prior warnings or discipline (also contrary to Old Dominion's practice). Although timing alone will rarely be enough to overcome an otherwise legitimate reason, here Stillwell has provided additional reasons sufficient to create a triable issue of fact as to whether Old Dominion's explanations are pretextual. Accordingly, the Court denies Defendant's Motion for Summary Judgment on Claims Two, Three, Six, and Seven.

## C.  Failure to Accommodate Disability (Claims 2 and 6)

Stillwell also alleges that Old Dominion failed to provide reasonable accommodations for Stillwell's disability. Both 42 U.S.C. § 12112 and ORS § 659A.112 prohibit an employer from failing to make a reasonable accommodation for the known disability of a qualified individual. "Once an employer becomes aware of the need for accommodation, that employer has a mandatory obligation under the ADA to engage in an interactive process with the employee to identify and implement appropriate reasonable accommodations." *Humphrey v. Mem. Hosps. Ass'n*, 239 F.3d 1128, 1137 (9th Cir. 2001). An appropriate reasonable accommodation is one that effectively enables an employee to "perform the duties of the position." *Id.* (quoting *Barnett v. U.S. Air*, 228 F.3d 1105, 1114 (9th Cir. 2000), *vacated on other grounds,* 535 U.S. 391 (2002)).

Old Dominion argues that the only accommodation it knew that Stillwell needed was occasional time off and a modified work schedule, and that it provided all accommodations that Stillwell sought and needed. Stillwell responds that there are at least two accommodations that Old Dominion could have given him and that Old Dominon's failure to engage in the interactive

process led to a failure to provide these accommodations. The first, argues Stillwell, is

implementing his promotion, despite some ongoing limitations related to his illness. Stillwell has

provided no evidence showing that Old Dominion had any reason to believe that Stillwell was

unable to perform the duties of his previous position and that transfer to Regional Line Haul

Manager would "accommodate" his disability. Courts, however, have recognized that "the ADA

does not require the employer to reassign a disabled employee to a position that would constitute

a promotion." *Duvall v. Ga.-Pac. Consumer Prod., L.P.*, 607 F.3d 1255, 1261 (10th Cir. 2010)

(citing *Smith v. Midland Brake, Inc.*, 180 F.3d 11154, 1176 (10th Cir. 1999) (en banc)). In any

event, promoting Stillwell, by itself, is not an accommodation of a disability. The Court rejects

this argument by Stillwell.

The second allegedly denied accommodation is not using Plaintiff's allegedly poor

behavior in early 2018 against him as a cause for termination because that behavior was a

product of his disability, even if temporary. Plaintiff cites his email to Lorenzini saying, "if I am

grumpy I apologize now" because he needed to go off his medications temporarily before having

a certain treatment. Stillwell argues that this email should have alerted Old Dominion to his need

for at least temporary accommodation.

In general, an employee must inform an employer of the employee's disability and the

resulting limitations to create an obligation for an employer to engage in the interactive process

to develop reasonable accommodations. *See Wessels v. Moore Excavation, Inc.*, 2016

WL 1589894, at *15 (D. Or. Apr. 18, 2016). "An employer is required to initiate the interactive

process only when 'an employee is unable to make such a request' and 'the company knows of

the existence of the employee's disability.'" *Id.* (quoting *Brown v. Lucky Stores, Inc.*, 246

F.3d 1182, 1188 (9th Cir. 2001)). Viewing the evidence and all reasonable inferences in the light

most favorable to the nonmoving party, Stillwell has shown a genuine issue on this claim.

Accordingly, the Court denies Defendant's Motion for Summary Judgment on Claims Two and

Six, asserting failure to accommodate.

**D.  Sick Leave Retaliation (Claim 5)**

Stillwell argues that Old Dominion provides no basis for summary judgment against this

claim in its Motion. Old Dominion states in the introductory argument paragraph in its Motion:

"Stillwell's complaint asserts the following claims for relief: . . . (3) sick leave retaliation in

violation of ORS § 653.641[.] . . . As discussed below, Defendant is entitled to judgment as a

matter of law on each of these claims." ECF 27 at 8. Other than these few words, Old Dominion

never again mentioned Stillwell's claim under ORS § 653.641 in its Motion for Summary

Judgment. The only other mention of sick leave is in Old Dominion's fact summary, where Old

Dominion states that during Stillwell's absence, he did not use his accrued sick leave and Old

Dominion paid Stillwell his regular salary until he qualified for long-term disability benefits.

Stillwell argues that Old Dominion's failure to state a basis for summary judgment on

Stillwell's sick leave retaliation claim requires denial of summary judgment on that claim. Old

Dominion responded to this argument in a footnote in its Reply (ECF 38) and claimed that Old

Dominion's arguments against Plaintiff's OFLA and FMLA claims encompassed its arguments

on Stillwell's sick leave claim. The Court disregards this newly raised argument. *Graves v.

Arpaio*, 623 F.3d 1043, 1048 (9th Cir. 2010) (noting that "arguments raised for the first time in a

reply brief are waived"); *Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007) ("The district

court need not consider arguments raised for the first time in a reply brief."). The Court denies

Defendant's Motion for Summary Judgment on Stillwell's Claim Five for retaliation in violation

of the Oregon's Sick Leave Act.

**E.  Wrongful Discharge (Claim 9)**

Stillwell asserts a common law wrongful discharge claim. Old Dominion argues that this claim is duplicative of and precluded by adequate statutory remedies and should be dismissed[7] as a matter of law. *See Rinallo v. CAPSA Sols., LLC*, 222 F. Supp. 3d 927, 933 (D. Or. 2016) (collecting cases finding that a plaintiff may not bring a claim for wrongful termination based on their filing for worker's compensation benefits, because the statute prohibiting termination based on filing for worker's compensation benefits provides adequate remedy). Stillwell responds that his common law wrongful discharge claim is not precluded because the "statutory remedies under FMLA and OFLA do not preempt a wrongful-discharge claim under Oregon law because they do not authorize an award of general or noneconomic damages for emotional distress[.]" *Pacosa v. Kaiser Found, Health Plan of the Nw.*, 2011 WL 208205, at \*14 (D. Or. Jan. 21,2011) (internal quotation marks omitted). Like the FMLA and the OFLA, the OSLA does not authorize general or noneconomic damages. *See* ORS § 659A.885(3) (not including ORS § 659A.183 [OFLA] or ORS § 653.641 [OSLA] claims in remedial provision allowing for compensatory and punitive damages). In *Holien v. Sears, Roebuck & Co.*, 298 Or. 76 (1984), the Oregon Supreme Court held that a plaintiff in Oregon who seeks damages for emotional distress related to the termination of their employment does not have adequate statutory remedies available unless the statute in question allows for noneconomic damages. 298 Or. at 97.

*Rinallo* does not hold otherwise. In that case, the court rejected a common law wrongful discharge claim because it was based on whistleblowing conduct covered by ORS § 659A.199,

---

[7] Old Dominion uses this language in its Motion for Summary Judgment. The Court construes this section of Old Dominion's motion as a continuation its motion for summary judgment, rather than a separate motion for dismissal for failure to state a claim under Rule 12(b)(6).

which provides the full gamut of remedies, including emotional distress and punitive damages. *Rinallo*, 222 F. Supp. 3d at 933 (2016); *See* ORS § 659A.885(3) (including whistleblower claims under ORS § 659A.199 in remedial provision allowing for compensatory and punitive damages). Thus, provided there is sufficient evidence to support Stillwell's claims under FMLA, OFLA, or OSLA, Stillwell has also stated a wrongful discharge claim under Oregon common law. Because Stillwell has adequately stated claims under these statutes, his wrongful discharge claim may proceed. Accordingly, the Court denies Defendant's Motion for Summary Judgment against Claim Nine.

## CONCLUSION

The Court GRANTS Defendant's Motion for Summary Judgment (ECF 27) against Plaintiff's Eighth Claim, alleging family relationship discrimination in violation of ORS § 659A.309. The Court DENIES Defendant's Motion for Summary Judgment (ECF 27) in all other respects. Not later than September 20, 2021, the parties shall jointly lodge a proposed pretrial order consistent with LR 16-5.

**IT IS SO ORDERED**.

DATED this 20th day of July, 2021.

/s/ *Michael H. Simon*
Michael H. Simon
United States District Judge